IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES H.,[1]                                          Case No. 3:21-cv-00167-SB

                        Plaintiff,                      **OPINION AND ORDER**

            v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

                        Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

Charles H. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant

to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration
on or about July 9, 2021, and is substituted as the defendant. *See* FED. R. CIV. P. 25(d)(1).

Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff was born in June 1972, making him forty-four years old on September 22, 2016, his amended alleged disability onset date.[3] (*See* Tr. 15, 37-38, 61, 74.) Plaintiff is a high school

---

[3] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty-quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016, 2008 WL

graduate who completed one year of college and a certified nursing assistant ("CNA") course, and has past relevant work as a nurse assistant. (*Id.* at 26, 40, 55, 196.) In his DIB application, Plaintiff alleges disability due to posttraumatic stress disorder ("PTSD") and depression. (*Id.* at 62, 75, 195.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on February 13, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 15.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on July 29, 2020. (*Id.* at 36-59.) On September 2, 2020, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 15-28.) On December 11, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential

---

4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured ("DLI") of June 30, 2019 (*see* Tr. 15, 61, 74) reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before June 30, 2019, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-28.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 22, 2016, his amended alleged disability onset date. (*Id.* at 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[D]epression, anxiety, personality disorder, and [PTSD]." (*Id.* at 17.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 18.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," subject to these

limitations: (1) Plaintiff "would work better alone," (2) Plaintiff "should not work with the [general] public," and (3) Plaintiff can have no more than "occasional interaction with coworkers and supervisors." (*Id.* at 19.) At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a nurse assistant. (*Id.* at 26.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as an auto detailer, routing clerk, and collator operator. (*Id.* at 27.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to: (1) provide clear and convincing reasons for discounting Plaintiff's symptom testimony, and (2) "include a limitation of periodic outbursts and/or leaving work without permission about one time per week in [the] RFC." (Pl.'s Opening Br. at 5-9) (bold omitted). As explained below, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and

convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

**B.    Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 20, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ failed to meet that standard here.

The parties agree that the ALJ only provided two specific reasons for discounting Plaintiff's symptom testimony: (1) the record reflects that Plaintiff's mental health impairments improved with treatment, and (2) the objective medical evidence is inconsistent with Plaintiff's symptom testimony. (*See* Pl.'s Opening Br. at 7-8, asserting that the ALJ rejected Plaintiff's symptom testimony because it was "not consistent with the medical evidence, and . . . [his] symptoms improved with treatment"; Def.'s Br. at 2, arguing that "the ALJ reasonably discounted Plaintiff's allegations . . . because they were inconsistent with [his] improvement with treatment and clinical findings"). Plaintiff does not challenge the ALJ's finding that the objective medical evidence is inconsistent with Plaintiff's symptom testimony. (*See* Pl.'s Opening Br. at 7-8.) Instead, Plaintiff challenges only whether the ALJ erred in finding that Plaintiff's symptoms improved with treatment, noting that the Court must remand if it agrees, because conflicting "[o]bjective evidence is not a sufficient reason on its own to reject subjective symptom testimony." (*Id.*; *see also* Pl.'s Reply Br. at 1-2, seeking remand because conflicting "objective evidence cannot be the sole reason to reject a claimant's subjective symptom testimony").

The Commissioner does not dispute Plaintiff's claim that conflicting medical evidence cannot be the sole reason for discounting his symptom testimony. (*See* Def.'s Br. at 2-7.) The Court agrees that this appeal turns on whether the ALJ erred in discounting Plaintiff's testimony on the ground that his mental health symptoms improved with treatment. *See McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (explaining that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination"); *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that "an ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason"); *see also Whitehead v. Saul*, 830 F. App'x 173, 174-75 (9th Cir. 2020) (rejecting the claimant's arguments that the ALJ failed to, *inter alia*, "credit [his] testimony" in formulating the RFC and thus finding no error because the "RFC assessment account[ed] for all credible impairments and limitations which were supported by substantial evidence in the record").

An ALJ may discount a claimant's mental health-related symptom testimony on the ground that he improved with treatment. *See Cornellier v. Saul*, 834 F. App'x 321, 325 (9th Cir. 2020) (holding that the ALJ appropriately rejected the claimant's "claim that he is unable to perform past work or other employment due to his symptoms of anxiety and depression based on . . . evidence that [he] experienced a good therapeutic response to treatment when he is compliant"); *Niemi v. Saul*, 829 F. App'x 831, 832-33 (9th Cir. 2020) (holding that the ALJ did not err in discounting the claimant's symptom testimony and noting that the ALJ observed that the claimant's "mental health challenges appeared to improve with counseling and medication"). The Ninth Circuit, however, has also found harmful error in many cases involving an ALJ's

discounting of a claimant's mental health-related symptom testimony based on evidence of improvement.

For example, in *Garrison*, the ALJ discredited the claimant's symptom testimony "mainly on the ground that the record showed that [her] condition had improved due to medication at a few points between April 2007 and June 2009." 759 F.3d at 1016-17. The Ninth Circuit held that this was not a clear and convincing reason for discounting the claimant's testimony that "since April 2007, she had suffered panic attacks, 'a lot of ups and downs and depression,' severe anxiety, occasional suicidal thoughts, and bouts of paranoia and mania—symptoms that caused major difficulties with social functioning and responding to such stresses as shopping unaccompanied for groceries." *Id.* at 1017. In so holding, the Ninth Circuit observed that it had previously "emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Id.* The Ninth Circuit added that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (citing *Holohan*, 246 F.3d at 1205).

Relatedly, in *Smith v. Kijakazi*, 14 F.4th 1108, 1111-14 (9th Cir. 2021), the Ninth Circuit recently addressed a claimant's assertion that the ALJ erred in discounting the claimant's testimony because the record reflected that his symptoms waxed and waned and the ALJ characterized the record in a "selective" manner. *Id.* The Ninth Circuit explained that "the issue [was] not that the ALJ selected the least favorable findings from a record reflecting relatively consistent symptomatology," as the record "indicate[d] that [the claimant's] symptoms varied, and generally improved, during the [five to six] years following his [December 2012] onset

date[.]" *Id.* Although it agreed that substantial evidence supported the ALJ's finding that the claimant was not disabled at the time of July 2018 hearing, the Ninth Circuit nevertheless reversed and remanded for further fact-finding because "the ALJ did not adequately consider how [the claimant's] symptoms changed over time." *Id.* at 1110-13. In doing so, the Ninth Circuit stated that the ALJ needed to provide clear and convincing reasons for discounting a claimant's "*early-period*" testimony. *Id.* at 1113. As to the Commissioner's claim that the ALJ appropriately discounted the claimant's testimony because his "improvement with medication was inconsistent with his claimed disability," the Ninth Circuit explained that "this bolster[ed] rather than cut[] against the objection that [the claimant's] testimony could not be discredited as a whole because of changes over time or [conflicting evidence] relevant only to portions of testimony describing a certain period." *Id.*

Plaintiff's arguments suggest that this case is similar to the situation presented in *Garrison*, in that the record reflects debilitating symptoms and cycles of improvement and the ALJ impermissibly relied on a few isolated instances or limited periods of improvement and treated them as a basis for concluding that he is capable of working. For example, Plaintiff acknowledges that he "achieved some improvement in his ability to manage his anger and irritability," but emphasizes that the record demonstrates that his "anger has not resolved, and he has continued [to] have significant symptoms, including panic attacks, being easily overwhelmed, being triggered by people and situations, irritability, and periodic depressive symptoms." (Pl.'s Opening Br. at 7) (citations omitted). Plaintiff also notes that he "continue[s] to be quite tangential and needs multiple redirections during his appointments to stay somewhat on topic," and argues that the ALJ "ignored" evidence that contradicted his findings. (*Id.*; Pl.'s Reply Br. at 2.)

"An ALJ errs when [he] considers evidence . . . selectively, and ignores evidence that contradicts [his] findings." *Jacob T. v. Saul*, No. 19-01151-SB, 2020 WL 4451163, at *4 (D. Or. Aug. 3, 2020) (simplified). The Commissioner suggests that contrary to Plaintiff's arguments, the ALJ did not ignore evidence or consider evidence selectively. The Commissioner maintains that "the ALJ reasonably inferred that the overall record showed symptom improvement with treatment, particularly [Eye Movement Desensitization and Reprocessing ('EMDR')] therapy," even though Plaintiff later "reported a worsening of symptoms with the pandemic[.]" (Def.'s Br. at 3.) The Commissioner adds that "[a]t bottom, Plaintiff is asking this Court interpret the evidence in a light more favorable to him," and "even if the evidence is susceptible to another rational interpretation," the Court must uphold the ALJ's decision because it is supported by substantial evidence. (*Id.* at 4-5.)

A claimant fails to show harmful error by merely advocating for alternatives to an ALJ's rational interpretation of the record. *See Crawford v. Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore [did] not demonstrate error"); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Wilcox ex rel. Wilcox v. Colvin*, No. 13-2201-SI, 2014 WL 6650181, at *5 (D. Or. Nov. 24, 2014) (explaining that an "alternative interpretation of the evidence [was] insufficient to overturn the ALJ's findings"). In the Court's view, Plaintiff does not simply advocate for an alternative interpretation of the record; rather, he identifies a legally insufficient analysis and harmful legal error.

///

The Court concludes that the record does not include substantial evidence to support the ALJ's decision to discount Plaintiff's testimony on the ground that he improved with treatment. The findings and evidence detailed below suggest that the ALJ improperly isolated a few instances or a limited period of improvement and treated it as a basis for concluding that Plaintiff could work during the relevant period. *See generally Garrison*, 759 F.3d at 1017 ("[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

In discounting Plaintiff's symptom testimony, the ALJ found that Plaintiff's "reports of stability and lack of anger outbursts suggest[ed] improvement and [were] not consistent with disabling impairments." (Tr. 23; *see also* Tr. 43, Plaintiff testified it was a "fair assessment" to state that Plaintiff's "main problem," or barrier to employment, is "trouble controlling [his] anger," which he described as "explosive . . . at times"). The ALJ cited specific examples of improvement, nearly all of which postdate the DLI and/or stem from and relate to post-DLI PTSD therapy.

With respect to the pre-DLI time period, the ALJ noted that on January 14, 2019, Plaintiff visited his primary care physician, William Peffley, D.O. ("Dr. Peffley"), and "reported that he was doing better since [he switched the timing of his medications and was now] taking Seroquel in the mornings and Prazosin in the evenings," that "for the most part, he was stable with both medications," and that "he was no longer having angry outbursts and felt less paranoid." (*Id.* at

23, citing Tr. 436-37.) The ALJ failed to address other significant, contradictory reports from the same time period.

For example, on February 5, 2019, three weeks after visiting Dr. Peffley, Plaintiff presented for therapy with his primary counselor, Whitney Sherer ("Sherer"), who noted that Plaintiff continued to experience "anxiety, anger, [and] some depressive symptoms recently," and "report[ed] that his girlfriend realized he hadn't changed his clothes or showered for at least [four] days [and was] concerned [about an] increase in depression." (*Id.* at 418.) The next month, on March 8, 2019, Sherer noted "[c]ontinued anger" and that Plaintiff discussed the "importance of his possessions" and reported feeling like he is "always going between two sides[, i.e.,] losing [his] possessions could make [him] spiral and feel like [he] should go to a Mos[que] and take people out or go back to Portland and help clean up (most likely talking about [the] homeless population) . . . [and the] other side is trying to say no don't do that to [his] girlfriend or family." (*Id.* at 399.) The ALJ did not address these troubling reports, which do not reflect meaningful or sustained improvement.

The ALJ did summarize portions of a psychiatric evaluation that Lori Linton Nelson ("Linton Nelson"), a psychiatric mental health nurse practitioner ("PMHNP"), performed on March 27, 2019. (*Id.* at 23, citing Tr. 463-77.) However, the ALJ's summary fails adequately to address several notable observations from Linton Nelson's evaluation, which does not appear to support a finding that Plaintiff achieved meaningful improvement in his mental health symptoms in or around early 2019:

- Plaintiff presented as "angry, loud, and . . . difficult to interview, as the content of his speech [was] verbose [and] overly detailed," Plaintiff was "tangential" and needed to be "redirected many times," and Plaintiff

"use[d] hate speech, posturing and intimidation throughout the interview." (*Id.* at 463.)

- Plaintiff reported that he was "psychiatrically hospitalized" as a teen and diagnosed with "paranoid schizophrenia . . . but [was] in fact experiencing paranoia and psychoses as a result of PCP," he "thinks of hurting himself nearly every day, but he has no plan" to do so, and he has "a history of holding grudges and . . . attempting to hurt others when he has felt targeted" and "a legal history of assault, battery, and racial intimidation." (*Id.* at 463, 467.)

- Plaintiff stated that he "can't get a fair shake anywhere" and spends "most days . . . perseverating about his awful childhood and the [physical, emotional, and sexual] abuse that he endured," Plaintiff was "observed to be paranoid and suspicious," and Plaintiff made "several comments regarding wanting to get revenge on individuals who have done bad things to him in the past," "several statements regarding thoughts of physically harming individuals of other races, genders, and religious affiliation," and "comments regarding difficulty that he has had with homeless individuals in Portland," which is why "he moved to the Salem area to get away from the constant idea that he needed to defend himself or that he felt like harming individuals that were living in public housing near him." (*Id.* at 463-65.)

- Plaintiff "admit[ted] to being intolerant of others, but ma[de] no apologies for his feelings." (*Id.* at 464.)

The ALJ also failed adequately to address other notable pre-DLI record evidence. For example, on March 28, 2019, the day after Linton Nelson's evaluation, Sherer noted that although he had been "able to let a few things go" and "at times [could] identify that [his thinking was] not justified," Plaintiff continued to "have daily anger issues" and "be triggered and easily slip[] back into his racist/conspiracy thinking patterns[.]" (*Id.* at 401.)

About one year earlier, on March 26 and April 4, 2018, Plaintiff's then-treating physician, Ian Hoffman, M.D., noted that he "spoke to [Plaintiff] about [his] concerns for his well-being"; he believed that Plaintiff had "not improved overall" and needed "much closer follow up than his counseling," such as "[a] psychiatrist and case management," because Plaintiff's "thought content [was] worrisome along with [his] past history [of] violence"; he "called the Multnomah County crisis line to open a case," the crisis line referred the case to "Project Respond," and Plaintiff received a visit from the police and Project Respond; Plaintiff continued to "have violent thoughts towards others"; Plaintiff had "a restraining order from [Portland State University due to an] incident with [a] Muslim student [in 2017]"; a recent "March For Lives made [Plaintiff] very upset"; Plaintiff "often thinks of harming others with different political views"; and Plaintiff recently had "an episode at Safeway where he wanted to kill someone" who was "sighing loudly [and] impatient[.]" (*Id.* at 302-03.) Later that same year, on November 28, 2018, Plaintiff visited Dr. Peffley and reported issues with "uncontrolled" depression, which was "aggravated by conflict or stress and social interactions" and "associated with irritability." (*Id.* at 450.)

The ALJ's post-DLI examples likewise fail to reflect substantial evidence to support discounting Plaintiff's testimony on the ground that he improved with treatment.

The ALJ observed that on November 14, 2019, over three years after the amended alleged onset date of September 22, 2016 and nearly five months after the date last insured of June 30, 2019, Sherer noted that (1) Plaintiff was "much calmer than he had previously been, was able to successfully answer questions, and stay mostly on topic," (2) "[o]n mental status examination, [Plaintiff] was cooperative with tense mood and anxious affect, but [his] intellectual functioning and memory were within normal limits," and (3) Plaintiff had started EMDR therapy and "seen a great improvement in some of his symptoms and insights into past behaviors . . . [and] been able to implement some skills.[4] (*Id.* at 23-24, citing Tr. 502-03.) The ALJ also noted that later that same month, on November 26, 2019, Plaintiff reported "insight and greater calm," an "increased awareness of things he used to enjoy," and that he "had not had any outbursts that week," and Glenda Atkins ("Atkins"), the counselor who provided individual EMDR therapy, noted that Plaintiff was "showing improvement in his mood, ability to feel calm, and to moderate reactivity." (*Id.* at 24, citing Tr. 499.)

In the same paragraph of his decision, the ALJ cited additional examples from December 2019 and January and March 2020:

- On December 12, 2019, Atkins observed that Plaintiff was "making marked progress in tolerating distress." (*Id.*, citing Tr. 497.)

- On January 2, 2020, Atkins noted that Plaintiff was "progressing and wanting to go to work." (*Id.*, citing Tr. 495.)

---

[4] "EMDR therapy was developed in 1987 to treat trauma and a range of experientially based disorders, including [PTSD]." *Blackburn v. United States*, No. 20-8005, 2021 WL 3027979, at *2 n.1 (10th Cir. July 19, 2021) (citation omitted). As discussed above, the ALJ found that Plaintiff's PTSD is a severe impairment. (Tr. 17.)

- On January 9, 2020, during EMDR therapy with Atkins, Plaintiff reported "a marked difference in his reaction to stress" and that "he had no angry outbursts [the past week], had noticed an increase in compassion, was less focused on himself, and was handling stress with ease." (*Id.*, citing Tr. 493.)

- On January 14, 2020, Plaintiff "worked with an employment case manager, who noted that they began a career profile and exploration of different topics," and that Plaintiff was "easily distracted and went off topic, [but] was easily redirected." (*Id.*, citing Tr. 490.)

- On January 15, 2020, Plaintiff informed Sherer that he was "able to stay calm in a crowded store[] when someone pushed into him." (*Id.*, citing Tr. 492.)

- On January 16, 2020, Plaintiff visited Atkins and "continued to report not having any outbursts and ongoing improvement in distress tolerance." (*Id.*, citing Tr. 491.)

- On January 23, 2020, Atkins observed that Plaintiff "appeared to be stabilized and was not presenting with trauma to be processed via EMDR," and that Plaintiff had "greatly achieved freedom from being triggered by trauma, was less reactive, and more easily able to rationally process." (*Id.*, citing Tr. 489.)

- On March 3, 2020, Plaintiff "continued to work on his career profile[.]" (*Id.*, citing Tr. 482.)

- On March 10, 2020, Plaintiff visited Sherer and reported "some increased anger with the Covid pandemic and [stated] that he had decided to stay home because of lack of impulse control." (*Id.*, citing Tr. 481.)

- On March 24, 2020, Sherer noted that Plaintiff "continued to have anxiety, but had been attempting to de-stress and ignore situations rather than escalating them." (*Id.*, citing Tr. 480; *but cf. id.* at 508-09, May 7, 2020, Sherer stated that she is not aware of Plaintiff "physically hurt[ing] anyone while being in [her] care . . . , [but] there have been several instances where he has expressed wanting to hurt others or being in situations where has come close, and . . . his significant other getting him out of that situation [or] he would have," and "feels confident in saying that at this time [Plaintiff] could be a danger or others if he is working in a public space in any capacity").

These post-DLI examples of improvement do not amount to substantial evidence to discount Plaintiff's testimony relating to the pre-DLI time period. The ALJ assessed whether Plaintiff was disabled between "the amended alleged onset date of September 22, 2016, through June 30, 2019, the date last insured." (*Id.* at 16; *see also id.* at 27, the ALJ also concluded that Plaintiff was not disabled "from June 15, 2015, the [initial] alleged onset date, through June 30, 2019, the date last insured"). Furthermore, the ALJ assessed whether Plaintiff engaged in substantial gainful activity, suffered from a severe impairment, met or medially equaled a listed impairment, and could perform any of his past work *before* the DLI, and formulated an RFC regarding Plaintiff's work-related limitations "through the [DLI]." (*Id.* at 17-19, 26.) Despite these findings, the ALJ discounted Plaintiff's testimony based on evidence of improvement from

late 2019 and early 2020, and failed adequately to address significant, contradictory evidence or whether Plaintiff showed meaningful improvement between September 2016 and June 2019.

The ALJ needed to address whether Plaintiff's mental health symptoms improved to such a degree during the relevant time period that he was capable of sustaining gainful employment. *See Maryanne M. v. Saul*, No. 3:19-cv-00200, 2021 WL 1186830, at *11 (S.D. Cal. Mar. 23, 2021) (holding that the ALJ erred in discounting the claimant's testimony based on evidence of improvement because the evidence the ALJ cited from the relevant time period did "not show that [the claimant's] treatment ha[d] been successful in controlling her symptoms such that [she was] able to perform work commensurate with the ALJ's RFC assessment," and the remaining "improvement [that the ALJ] noted in [the] record was reported after [the claimant's] date last insured"); *cf. Svaldi v. Berryhill*, 720 F. App'x 342, 343-44 (9th Cir. 2017) ("Viewed in the context of the record as a whole, the treatment records . . . are reasonably read as reflecting that [the claimant] had a chronic condition and experienced some periods of improvement during the relevant two-year period prior to her DLI, but those periods of improvement were not sustained. As a result, the ALJ's conclusion that [one of the treating physician's uncontradicted] opinion was inconsistent with the record prior to [the claimant's] DLI does not rest on a clear and convincing reason that is supported by substantial evidence.") (citations omitted); *Smith v. Bowen*, 849 F.2d 1222, 1226 (9th Cir. 1988) (reflecting that the Ninth Circuit has "state[d] that in a case of back injury and disc disease, '[a]ny deterioration in her condition subsequent to [the date of her last coverage] is, of course, irrelevant'" (quoting *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971)).

It is not inappropriate for ALJs to consider post-DLI medical evidence. *See Smith*, 849 F.2d at 1225-26 (stating that "it is clear that reports containing observations made after the

period for disability are relevant to assess the claimant's disability," as "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis") (citations omitted); *William M. v. Comm'r of Soc. Sec.*, No. 17-00536-PK, 2018 WL 3146595, at *7 (D. Or. June 27, 2018) (explaining that an ALJ assessing a claimant's DIB application must consider all available evidence, which "includes evidence that post-dates a claimant's DLI" (citing *Smith, 849 F.2d at 1225*)). The ALJ here, however, relied on evidence that does not relate back to the time period at issue.

Notably, Plaintiff's reported improvement from late 2019 and early 2020 appears to have stemmed from and relate to his EMDR therapy. Linton Nelson recommended EMDR therapy in March 2019, and it appears that Plaintiff could not start EMDR therapy until late 2019. (*See* Tr. 463-73, on March 27, 2019, Linton Nelson stated that Plaintiff was a "good candidate for EMDR"; *id.* at 401, on March 28, 2019, Sherer noted that Plaintiff was "possibly open to EMDR work once available"; *id.* at 501-03, on November 14, 2019, Sherer noted that Plaintiff had "started EMDR and processed some trauma" and "seen a great improvement in some of his symptoms and insights into his past behaviors," and she recommended that Plaintiff "continue to go to EMDR"; *id.* at 496, Plaintiff's EMDR therapy related to past sexual abuse and "memories of being groomed and 'initiated'"; *id.* at 489, 491, 493, 495, 496-97, 499, Plaintiff presented for EMDR therapy with Atkins on November 26, December 12, and December 19, 2019, and on January 2, January 9, January 16, and January 23, 2020; *id.* at 491, on January 16, 2020, Atkins stated that Plaintiff had "successfully process[ed] his most troubling trauma," had one more appointment to "complete a target" and would then continue therapy with Sherer, and was "always welcome to return for EMDR when trauma emerges"; *id.* at 489, on January 23, 2020, Atkins stated that Plaintiff "appear[ed] to be stabilized and [was] not presenting with trauma to

be processed via EMDR," Plaintiff had "greatly achieved freedom [from] being triggered by trauma and [was] less reactive and more able to rationally process," Plaintiff had reduced his anger episodes to "less than [one] time per week" and gained "[i]ncreased insight into trauma and [was] able to make decisions based on [the] present," and Plaintiff should continue working with Sherer but would be "referred to EMDR if further trauma [was] not responsive to skill work and talk therapy"; *id.* at 487, on February 4, 2020, Sherer noted that Plaintiff had "end[ed] EMDR for now" and was "worried that he will fall backwards, but was re-assured that he could back to EMDR when needed"; *id.* at 484, on February 25, 2020, Sherer noted that Plaintiff "processed some of his trauma in EMDR" and "may go back"; *id.* at 478, on April 6, 2020, Sherer stated Plaintiff's six-month goals included "complet[ing] EMDR treatment to process his trauma"; *id.* at 504-07, on May 5, 2020, Sherer stated that Plaintiff continued to "be quick to anger" and "experience anger, irritability, depression, low self-care at times, [and] hopelessness," but had "started EMDR and processed some trauma" and "seen a great improvement in some of his symptoms and insights into his past behaviors," and her recommendations included "continued individual therapy and EMDR").

For all of these reasons, the Court concludes that substantial evidence does not support the ALJ's finding that during the period at issue, Plaintiff's symptoms improved to such a degree that he could perform work consistent with the ALJ's RFC. Although the Commissioner argues that the ALJ also appropriately discounted Plaintiff's testimony on the ground that it was inconsistent with the objective medical evidence (*see* Def.'s Br. at 4), the ALJ's reliance on conflicting objective medical evidence cannot be the sole reason for discounting Plaintiff's testimony. *See McClaren*, 812 F. App'x at 501 (explaining that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination");

*Valdez*, 746 F. App'x at 677 (noting that "an ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason"). The Court thus finds that the ALJ committed harmful error in discounting Plaintiff's testimony.

## II.    THE ALJ'S RFC ASSESSMENT

Plaintiff argues that substantial evidence does not support the ALJ's RFC assessment because he failed to include a "limitation of periodic outbursts and/or leaving work without permission about one time per week[.]" (Pl.'s Opening Br. at 8) (bold omitted). Given the error described above, the Court agrees that substantial evidence does not support the ALJ's RFC assessment.

The Court also notes that in addressing the limitations that the ALJ did account for in the RFC, Plaintiff makes a passing reference to Sherer's opinion being "supported and fully consistent with the evidence" related thereto. (Pl.'s Opening Br. at 9.) The ALJ addressed Sherer's opinion about Plaintiff's work-related functional limitations and provided specific reasons for discounting it. (*See* Tr. 25-26.) Plaintiff's opening brief did not specifically challenge the ALJ's discounting of Sherer's opinion or address the applicable standard of review, but Plaintiff does concede that "parts" of Sherer's "functional assessment may not have been well supported." (Pl.'s Opening Br. at 9.) Plaintiff's reply brief also fails to address or dispute the Commissioner's assertion that Plaintiff failed specifically to challenge the ALJ's reasons for discounting Sherer's opinion and thus "forfeit[ed] the issue." (*See* Def.'s Br. at 6; Pl.'s Reply Br. at 1-4.)

The Court concludes that Plaintiff has failed adequately to develop any argument regarding the ALJ's discounting of Sherer's opinion, as required to invoke the Court's review. *See Meyers v. Berryhill*, 733 F. App'x 914, 916 (9th Cir. 2018) (holding that the claimant failed

"adequately to develop several of her arguments 'specifically and distinctly,' including those pertaining to the ALJ's assessment of evidence from [physicians and physical therapists], . . . as required to invoke the Court's review," and noting that the claimant's assertions were not "accompanied by meaningful arguments other than that the disputed evidence [was] inconsistent with [certain] testimony"). Accordingly, the Court declines to address the matter further in this appeal. *See Bagley v. Comm'r of Soc. Sec.*, No. 16-00389, 2018 WL 1024162, at *8 (E.D. Wash. Feb. 6, 2018) (declining to address the ALJ's consideration of a medical expert's testimony because the claimant "fail[ed] to specifically identify or challenge the ALJ's actual finding in his briefing"), *report and recommendation adopted*, 2018 WL 1023105, at *1 (E.D. Wash. Feb. 22, 2018).

## III.    REMEDY

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted).

Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.    Analysis

The Court concludes that it must remand Plaintiff's case for further administrative proceedings because the record has not been fully developed and further proceedings will be useful.

A district court may exercise its discretion to "remand for further proceedings if enhancement of the record would be useful." *Fahtima R. v. Comm'r of Soc. Sec.*, No. 18-5970-MJP, 2019 WL 2022461, at *4 (W.D. Wash. May 8, 2019) (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)). In *Fahtima R.*, for example, the court observed that the "the record show[ed] conflicts between unchallenged state agency doctor opinions and [a physician's improperly discredited] opinions that the ALJ [needed to] address[.]" *Id.* The court therefore remanded the case for further proceedings because "enhancement of the record would be useful." *Id.*; *see also Graham v. Colvin*, No. 14-5311, 2015 WL 509824, at *5-8 (W.D. Wash. Feb. 6, 2015) (remanding for further proceedings and explaining that although the ALJ erred in discounting the claimant's testimony, the claimant did not challenge certain conflicting medical opinions and thus there were outstanding issues in the record about the extent of the claimant's limitations).

Here, Plaintiff does not challenge the ALJ's evaluation of several conflicting medical opinions. Thus, there are conflicts the ALJ must resolve and further enhancement of the record would be useful. Accordingly, the Court exercises its discretion to remand this case for further proceedings. *See K'Lean B. v. Kijakazi*, No. 6:20-cv-02156-SB, 2022 WL 1831213, at *10 (D.

Or. June 3, 2022) (remanding for further proceedings and noting that the claimant did not

challenge the ALJ's assessment of medical opinions that supported the RFC but not a disability

claim).

## CONCLUSION

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and

REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 18th day of July, 2022.

_Stacie F. Beckerman_
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge